## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                    **MEMORANDUM OF LAW & ORDER**
                                         Criminal File No. 11-87 (MJD/HB)

(7) ADETOKUNBO OLUBUNMI ADEJUMO,

          Defendant.

Lola Velazquez-Aguilu, Assistant United States Attorney, Counsel for Plaintiff.

Jordan S. Kushner, Law Office of Jordan S. Kushner, Counsel for Adetokunbo Olubunmi Adejumo.

## I.      INTRODUCTION

This matter is before the Court on Defendant Adetokunbo Olubunmi Adejumo's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence.  [Docket No. 1064]  Because, based on the record, Defendant cannot establish ineffective assistance of counsel, Defendant's motion is denied.

## II.      BACKGROUND

On July 26, 2011, Defendant Adetokunbo Olubunmi Adejumo pled guilty to two counts in the Superseding Indictment: Count 8, Bank Fraud, in violation of 18 U.S.C. §§ 2 and 1344, and Count 47, Aggravated Identity Theft, in violation of 18 U.S.C. §§ 1028A and 2.  In exchange for Adejumo's plea of guilty, the Government dismissed Count 1, Bank Fraud Conspiracy, in violation of 18 U.S.C. §§ 1344, 1349; Counts 3, 4, 5, 13, and 27, Bank Fraud, in violation of 18 U.S.C. §§ 2 and 1344; Counts 29, 31, and 32, Mail Fraud, in violation of 18 U.S.C. §§ 2 and 1341; and Counts 43, 44, 51, and 54, Aggravated Identity Theft, in violation of 18 U.S.C. §§ 2 and 1028A.

On July 17, 2012, and August 14, 2012, the Court held sentencing hearings. [Docket Nos. 696, 742]  When calculating the applicable Guidelines, the Court held that, based on the stipulation in the Plea Agreement, the loss amount was more than $1 million and less than $2 million; thus, the Court applied a 16-level enhancement.  The Court applied a 3-level role enhancement.  The Court also applied a 2-level enhancement for obstruction of justice based on the Court's finding that Adejumo willfully testified falsely at his detention hearing.  Based on the Court's finding of perjury, the Court also denied application of the acceptance of responsibility reduction.  The total offense level was 28.  The Court

held that Adejumo was a criminal history category IV.  The resulting Guideline range was 110 to 137 months, plus 24 months consecutive.

The Court granted a downward variance and sentenced Defendant to 124 months in prison and 5 years supervised release.  The Court ordered mandatory restitution but left the amount of restitution open because the amount owed to specified victims had not yet been ascertained.

On August 20, 2012, Defendant filed a Pro Se Notice of Appeal to the Eighth Circuit Court of Appeals.  [Docket No. 762]  In 2014, the Eighth Circuit Court of Appeals affirmed Adejumo's sentence, including affirming the calculation of the loss amount enhancement, the obstruction of justice enhancement, the role enhancement, the denial of acceptance of responsibility, and the calculation of his criminal history score.  United States v. Adejumo, 772 F.3d 513, 534-38 (8th Cir. 2014).

On August 15, 2013, the Government filed a Motion to Amend Judgment seeking to order restitution.  On August 29, 2013, the Court granted the Government's motion.  [Docket No. 1002]  On October 30, 2013, Adejumo filed Defendant's Motion to Re-open and for Reconsideration of Restitution.  [Docket No. 1018]  On March 26, 2014, the Court denied Defendant's motion to reopen

3

the restitution judgment on the grounds that it lacked jurisdiction to do so.

[Docket No. 1025]  In 2015, the Eighth Circuit Court of Appeals reversed this

Court's Order denying the motion to reopen restitution and remanded the case

for the Court to hold a hearing on the issue of restitution.  United States v.

Adejumo, 777 F.3d 1017, 1020 (8th Cir. 2015).  After hearings on the matter of

restitution, on December 23, 2015, the Court amended the Judgment to include

restitution in the following amounts: Anchor Bank: $89,140; Bank of America:

$23,000; Chase Debit: $235,258.39; and Guaranty Bank: $148,405.47.  [Docket No.

1156]

On April 20, 2015, Adejumo filed the current Motion under 28 U.S.C. §

2255 to Vacate, Set Aside or Correct Sentence.  [Docket No. 1064]  He sets forth

five grounds for his motion: 1) that defense counsel Kenneth Udoibok was

ineffective for failing to meaningfully challenge the finding that Adejumo

committed perjury; 2) that counsel was ineffective for failing to advise Adejumo

of the risks from testifying at his detention hearing; 3) that counsel was

ineffective for failing to contest the loss amount attributable to Adejumo; 4) that

counsel was ineffective for failing to meaningfully challenge the evidence that

Adejumo was a manager or supervisor; and 5) that counsel was ineffective for

failing to challenge the finding that Adejumo was on probation at the time of the

offense.  On September 8, 2015, the Court appointed Jordan Kushner to assist

Adejumo with his § 2255 motion.  [Docket No. 1086]

## III.   DISCUSSION

### A.   Standard for Relief under 28 U.S.C. § 2255

28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act
> of Congress claiming the right to be released upon the ground that
> the sentence was imposed in violation of the Constitution or laws of
> the United States, or that the court was without jurisdiction to
> impose such sentence, or that the sentence was in excess of the
> maximum authorized by law, or is otherwise subject to collateral
> attack, may move the court which imposed the sentence to vacate,
> set aside or correct the sentence.

> Relief under 28 U.S.C. § 2255 is reserved for transgressions of
> constitutional rights and for a narrow range of injuries that could
> not have been raised on direct appeal and, if uncorrected, would
> result in a complete miscarriage of justice.  A movant may not raise
> constitutional issues for the first time on collateral review without
> establishing both cause for the procedural default and actual
> prejudice resulting from the error.

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted).

Alternatively, the procedural default can be excused if the defendant can

demonstrate that he is actually innocent.  Bousley v. United States, 523 U.S. 614,

622 (1998).

"Issues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255." United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001).

"The general rule is that a valid guilty plea waives all non-jurisdictional defects.  Stated differently, a valid guilty plea forecloses an attack on a conviction unless on the face of the record the court had no power to enter the conviction or impose the sentence."   Walker v. United States, 115 F.3d 603, 604 (8th Cir. 1997) (citation omitted).  "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." Id. (quoting United States v. Morrison, 967 F.2d 264, 268 (8th Cir. 1992)).

A petitioner is entitled to an evidentiary hearing on a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).

> [A] petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.

Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995) (citations omitted).

### B.    Ineffective Assistance of Counsel Standard

In order to gain relief for ineffective assistance of counsel, Defendant must establish both that his counsel's performance "fell below an objective standard of reasonableness," and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 688, 692 (1984).  The burden is on Defendant to establish a "reasonable probability that, but for counsel's unprofessional errors, the result would have been different."  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  Thai v. Mapes, 412 F.3d 970, 978 (8th Cir. 2005) (quoting Strickland, 466 U.S. at 687).  The Court "need not address the reasonableness of the attorney's behavior if the movant cannot prove prejudice." United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

Counsel's performance is deficient if it falls outside of the "wide range of reasonable professional assistance," although there is a strong presumption that counsel's conduct falls within this broad spectrum.  Strickland, 466 U.S. at 689. "Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after

conviction or adverse sentence, and it is all too easy for a court, examining

counsel's defense after it has proved unsuccessful, to conclude that a particular

act or omission of counsel was unreasonable."  Id.  "Counsel's performance is

deficient when it is less competent than the assistance that should be provided by

a reasonable attorney under the same circumstances."  Chambers v. Armontrout,

907 F.2d 825, 828 (8th Cir. 1990) (citing Strickland, 466 U.S. at 687).

### C.    Ground One: Ineffective Assistance of Counsel for Failure to Meaningfully Challenge the Finding that Defendant Committed Perjury

#### 1.    October 20, 2011 Revocation Hearing

On October 20, 2011, the Magistrate Judge held an evidentiary hearing

regarding a petition to revoke Adejumo's pretrial release.  [Docket Nos. 489, 556]

The petition alleged that Defendant had committed domestic assault.  During the

evidentiary hearing, Brooklyn Park Police Officer Elliot Faust testified that, on

October 7, 2011, he was called to meet Sarhan Salan, who informed him that she

had an intimate relationship with Adejumo and that, twelve hours earlier, she

had been in an altercation with Adejumo, during which he slapped her, choked

her until she could not breathe, and kicked her in the head four times.  ([Docket

No. 556] Det. Hearing Tr. 5, 8-9.)  Faust testified that Salan told him that, while

Adejumo was choking her, he told her: "You're not going to breathe ever again."

(Id. 8.)  Faust also testified that Salan was not drunk when she spoke to him.  (Id. 52-53.)  The Government introduced photographs of Salan's neck from October 7, which showed marks consistent with manual strangulation.  (Id. 9-11.)  Salan then testified for the defense, stating that she could not clearly remember the altercation because she was inebriated, she had no memory of Adejumo assaulting her, she only remembers him standing over her, and she did not know who assaulted her.  (Id. 22-24, 26.)  She testified that she was still drunk when she talked to the police and she was confused and assumed that Adejumo had strangled her because he was on top of her after the assault.  (Id. 27.)  Finally, Adejumo testified that he witnessed a "whole bunch" of people fighting with Salan and that he did not strangle, strike, or kick her.  (Id. 41-43.)  He also testified that he did not see anyone strangle Salan.  (Id. 46-47.)

After the hearing, the Magistrate Judge issued an order vacating the conditions of release and detaining Adejumo.  [Docket No. 490]  The Magistrate Judge stated that he believed the version of events reported by Salan to the police and did not believe the testimony of Adejumo and that there was probable cause to believe that Adejumo violated state law by assaulting Salan.

2.      **Sentencing**

Based on the Magistrate Judge's Order stating that he did not believe

Adejumo's testimony during the revocation hearing, the PSI recommended a

two-point enhancement for obstruction of justice based on providing materially

false information to a magistrate judge.  (PSI ¶¶ 80-82, 95.)  The PSI further

recommended that the three-level reduction for acceptance of responsibility not

be applied because Adejumo perjured himself during the revocation hearing.

(Id. ¶¶ 85, 96.)

Udoibok filed objections to both the obstruction of justice enhancement

and the failure to apply acceptance of responsibility.  [Docket No. 663]  He

argued both that Adejumo did not lie to the Magistrate Judge and that there was

a lack of materiality.  (PSI at A.3; Def.'s Position at 4-5.)  He noted that the State

of Minnesota had dismissed the charges against Adejumo, in part based on

Salan's testimony before the Magistrate Judge.

During the sentencing hearing, with regard to the obstruction

enhancement, the Court stated that it had read the detention hearing transcript,

and the Government stated that Faust was available for testimony, if the Court

desired.  ([Docket No. 807] July 18, 2012 Sent. Tr. 2-3.)

Udoibok stated:

10

Your Honor, first, I wasn't – I'm not sure there's any contest.  The first issue I think the Court can take notice.  The transcript is there and the order of Magistrate Judge Noel regarding the detention hearing, it's in evidence.  I don't think we need to readdress that.

(Id. 3.)

During the hearing, the Court explained:

The Court has reviewed the transcript of that hearing.  It was fully developed.  There's no no – it's not necessary to have the officer testify today.  The Court finds that either under a de novo review or a deferential review of the transcript of Judge Noel it is clear that the defendant lied and therefore should receive the obstruction of justice, a two-level enhancement.  I should say committed perjury so it's clear.

(July 18, 2012 Sent. Tr. 7-8.)

The Court applied the obstruction of justice enhancement, explaining that it had conducted an "independent review of the transcript of the hearing," and had concluded that "it is clear that Defendant willfully lied regarding whether he assaulted Salan."  ([Docket No. 755] Statement of Reasons at 7.)  The Court further concluded that Defendant's statement to the Magistrate Judge was material.  (Id.)

### 3.    Discussion

Adejumo argues Udoibok was ineffective for allowing the Court to rely on the transcript and the Magistrate Judge's findings without evaluating the witness

11

testimony itself and for failing to mount a meaningful legal challenge to the basis

for a perjury finding based on the record.  The Eighth Circuit held that Adejumo

was estopped from raising an objection on appeal to the Court's reliance on the

transcript because, during the sentencing hearing, he had agreed that the Court

"could rely on the transcript from the October 20 hearing to resolve the issue and

declined the opportunity for a de novo hearing before the district court."

Adejumo, 772 F.3d at 535.

First, the Court notes that Udoibok did meaningfully object to the

obstruction of justice enhancement both on the grounds that Adejumo's

testimony was not perjurious and on the grounds that it was not material.

Second, the Court concludes that there was no requirement that it hold an

evidentiary hearing regarding the testimony in the first detention hearing.

"[I]f a defendant objects to a sentence enhancement resulting from her trial

testimony, a district court must review the evidence and make independent

findings necessary to establish a willful impediment to or obstruction of justice,

or an attempt to do the same, under the perjury definition[.]"  United States v.

Dunnigan, 507 U.S. 87, 95 (1993).  There is no requirement that the sentencing

court hear live witnesses from the original proceeding retelling their original

12

testimony before imposing an obstruction enhancement based on perjury.  See

id. at 90-91, 98 (upholding application of obstruction of justice enhancement

based on perjurious trial testimony when, at sentencing, the court ruled after

argument, but not testimony).  See also United States v. Hall, 171 F.3d 1133, 1154

(8th Cir. 1999) (rejecting "the defendants' contentions regarding the necessity for

an evidentiary hearing in connection with the imposition of their sentences,"

when different judges presided over the sentencing and the trial and witness

credibility was at issue but the sentencing court reviewed the transcript of the

trial testimony).

Third, Adejumo's complaint that review of the transcript was insufficient

because, at the detention hearing, the Magistrate Judge only applied a probable

cause standard, rather than the preponderance of the evidence standard, is

misplaced.  At sentencing, this Court conducted an independent review of the

transcript, made its own finding that "it is clear that Defendant willfully lied,"

and found that he had committed perjury on a material matter.  As the Eighth

Circuit held, there is "nothing in the record . . . to suggest the district court failed

to apply the proper standard when imposing the enhancement."  Adejumo, 772

F.3d at 535.

Fourth, the Court rejects Adejumo's claim that, based on the detention hearing transcript, the evidence is too weak to support a finding, by a preponderance of the evidence, that he committed perjury.  The transcript demonstrates that, soon after the incident, the victim, Adejumo's ex-girlfriend, voluntarily met with the police officer, gave a detailed account of her assault by Defendant, and bore manual strangulation marks on her neck.  At the hearing, the victim then claimed that she could not remember who assaulted her, but testified that Adejumo was standing over her when she came to.  She claimed that she was inebriated when she had spoken to the officer, but the officer testified that he was experienced in identifying whether a witness was inebriated and, at the time of her statement, the victim was not.  Adejumo testified that he was present for the incident but did not know who assaulted her and did not see anyone strangle her.

### 4.    Conclusion

The Court holds that Adejumo cannot show ineffective assistance of counsel with regard to Udoibok's challenge to the obstruction of justice enhancement because he cannot show prejudice.  There was no requirement that the Court take testimony regarding the perjury issue and, in fact, the Court

stated that it was not necessary to have Faust testify.  The Court conducted a <u>de novo</u>, independent review of the transcript of the detention hearing before the Magistrate Judge and concluded, based on a preponderance of the evidence, that Adejumo had committed perjury.  The transcript was complete and included the testimony of Faust, Salan, and Adejumo, all of whom were subject to vigorous examination by the Government and Udoibok.  While Salan testified that she did not recall whether Adejumo assaulted her or not, she did not contest that she reported to Faust that Adejumo had assaulted her and she testified that, after coming to, she saw Adejumo standing over her.  Furthermore, there were photographs taken less than a day after the assault showing manual strangulation marks on Salan's neck.  Adejumo flatly denied assaulting Salan, yet testified that, although he was present for the incident, he did not know who did assault her and did not see anyone strangle her.

At the sentencing hearing, the Government stated that Faust was available to testify.  However, there is no indication that Faust's testimony before the Court during the sentencing hearing would have been any different than his testimony during the detention hearing.  For that matter, Adejumo does not offer evidence that any other witness would have been available to testify and would

have offered different testimony at a second hearing than they did at the first

hearing.  In sum, Adejumo cannot show a reasonable probability that, but for

counsel's alleged errors, the result would have been different.

### D.   Ground Two: Ineffective Assistance of Counsel for Failure to Advise Defendant of the Risks from Testifying at His Detention Hearing

Adejumo claims that Udoibok suggested that he testify during the

detention hearing.  ([Docket No. 1141] Adejumo Decl. ¶ 8.)  He further asserts

that Udoibok did not warn him of any risks or negative consequences from

testifying.  (Id.)   In his memorandum, Adejumo argues that he would not have

testified "if he had any understanding of the risks, and therefore would not have

received an obstruction of justice enhancement or denial of acceptance of

responsibility."  ([Docket No. 1064] Opening Brief at 7-8, 16.)

The Government has submitted Udoibok's affidavit, in which he avers that

he had "lengthy and multiple" discussions with Adejumo regarding the

potential impact of testifying at the detention hearing.  ([Docket No. 1094-1]

Udoibok Aff. ¶ 22.)  Udoibok asserts that he explained that the Government had

to meet a low standard to prove the pretrial release violation and that the odds of

avoiding detention were very low.  (Id. ¶ 18.)  He claims that he also "had

previously analyzed the pros and cons of testifying in any criminal matter" with

Adejumo.  (Id. ¶ 24.)  He asserts that he told Adejumo "that there were

consequences such as additional points for committing an offense and testifying

falsely in a federal proceeding," that testifying was "critical and risky," and that

the Government would likely "pull the deal" for cooperation if his testimony did

not go well.  (Id. ¶ 20.)

The Court need not reach the question of whether to find Adejumo or

Udoibok more credible, because, even taking Adejumo's allegations as true, his

ineffective assistance of counsel claim fails.  Adejumo does not claim that

Udoibok had any indication that Adejumo planned to perjure himself, and

Adejumo took the oath before testifying.  (See Det. Hearing Tr. 36.)  "Defense

counsel [] is not required to warn a defendant that testifying untruthfully could

lead to a sentence enhancement for obstruction of justice, especially when the

defendant has taken the oath."  Cleckler v. United States, No. 2:08-CV-397-WKW,

2009 WL 1507538, at *13 (M.D. Ala. May 29, 2009), aff'd, 410 F. App'x 279 (11th

Cir. 2011).  "[T]aking the oath prefatory to testifying informs a witness that

truthful testimony is expected.  That the untruthful witness may not be aware of

the exact penalty to be suffered does not mean that he is unaware of the

prohibition against false testimony."  Robertson v. United States, 144 F. Supp. 2d

58, 67 (D.R.I. 2001).  Cf. United States v. Mandujano, 425 U.S. 564, 581-82 (1976)

("Once a witness swears to give truthful answers, there is no requirement to

warn him not to commit perjury or, conversely to direct him to tell the truth.  It

would render the sanctity of the oath quite meaningless to require admonition to

adhere to it.") (quoting United States v. Winter, 348 F.2d 204, 210 (2d Cir. 1965)).

Thus, Udoibok's alleged failure to advise Adejumo that he could be

penalized for testifying falsely during the detention hearing does not fall below

the objective standard of reasonableness.  See, e.g., Corley v. United States, No.

CIV.A. 09-0080-WS-C, 2009 WL 4799535, at *12 (S.D. Ala. Dec. 1, 2009) (holding

that failure to warn defendant that he could be penalized with the obstruction of

justice enhancement if he testified falsely "did not fall below an objective

standard of reasonableness"), aff'd, 406 F. App'x 342 (11th Cir. 2010); United

States v. Williams, No. A01-126 CR JKS/JDR, 2005 WL 3303934, at *5 (D. Alaska

Dec. 5, 2005) ("Warning a criminal defendant that testifying untruthfully could

lead to a sentence enhancement for obstruction of justice is not a requirement for

a trial defense attorney under the constitutional standard of effective assistance

of counsel.  This is particularly so where the defense attorney lacks knowledge

that the defendant would commit perjury if she testified at trial.").

18

**E.**   **Ground Three: Ineffective Assistance of Counsel for Failure to Contest the Loss Amount Attributable to Defendant**

**1.**   **Loss Amount**

In the Plea Agreement, signed by Adejumo, his counsel, and the

Government, Adejumo admitted:

> From on or about January 2008 through in or about December 2009, in the State and District of Minnesota, the defendant, did knowingly and intentionally execute, and attempt to execute, a scheme and artifice to defraud federally insured financial institutions and to obtain, by means of false and fraudulent pretenses and representations, money and funds owned by and under the custody and control of financial institutions.  In total, through the execution of the scheme, the defendant admits that he and others obtained or attempted to obtain in excess of $1,000,000 in fraudulent proceeds.

(Plea Agreement ¶ 2.)  Furthermore, from on or about November 14, 2009,

through on or about November 30, 3009, he caused the use of a Chase Visa card

ending 1977, issued in the name of the stolen identity of J.A., whom he knew to

be a real person, in a series of cash advances totaling $17,800.  (Id.)

With regard to the Guideline calculations, the Plea Agreement states:

The parties . . . stipulate to the following guideline calculations:

**COUNT 8 –**

a.   Base Offense Level.  The parties agree that the base offense level for these offenses is 7.  (U.S.S.G. § 2B1.1(a)(2))

b.     <u>Specific Offense Characteristics</u>.  The parties believe that the offense level should be increased by 16 levels, because the loss amount was more than $1,000,000 but less than $2,500,000. (U.S.S.G. § 2B1.1(b)(1)(E).[)]  The parties agree that no other specific offense characteristics apply.

c.     <u>Chapter 3 Enhancements</u>. The government believes that a 3 level enhancement pursuant to § 3B1.1(b), for role in the offense is applicable in this case because the defendant was a manager or supervisor and the criminal activity involved five or more participants.  The defendant reserves the right to object to the role enhancement.  The parties agree that there are no Chapter 3 adjustments that apply.

* * *

e.     <u>Criminal History Category</u>.  Based on information available at this time, the parties believe that the defendant's criminal history category is IV.  This does not constitute a stipulation, but a belief based on an assessment of the information currently known.  Defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing.

* * *

(Plea Agreement ¶ 6.)

In the next paragraph, the Plea Agreement provides: "The foregoing stipulations are binding on the parties, but do not bind the Court."  (Plea Agreement ¶ 7.)

During the change of plea hearing, the following exchange occurred:

GOVERNMENT:

We're going through Count 8 first for the guideline sentence and it starts with an offense level of 7.  The Government is going to ask for a 16-level increase based on the loss amount.  Your lawyer is going to argue about loss, but we're going to tell the Court that it should be increased by 16 levels because the loss amount is from 1 million to 2.5 million.  Do you understand that?

ADEJUMO:

Yes, I do.

([Docket No. 806] Plea Tr. 5.)

Further, the Government asked: "The last page is page 9 and it's paragraph 12 that indicates this is a complete agreement, there's no other agreement.  Is that true?"  Adejumo responded, "Yes, it is."  (Id. 9.)

Later, the Court asked: "Counsel, is that your understanding of the plea agreement?"  (Id. 9.)

Udoibok responded: "Yes, Your Honor, except to the extent that in Count 8 in all of the categories, (a) through (i), that our understanding is that the defendant would be allowed to argue certain positions."  The Government stated, "That's true, Your Honor."  (Id.)

The Court responded, "Well, let's go to paragraph 6 so it's clear.  Count 8, paragraphs (a), (b), there's no disagreement on those two paragraphs; is that

correct?"   Udoibok answered, "Correct, Your Honor."  (Id. 9.)  Paragraph 6(b)

stated the loss amount.  The Court then contrasted Paragraphs 6(a) and 6(b) with

6(c), asking, "Paragraph (c) there will be – the defendant reserves the right to

object to the role enhancement."  (Id.)  Both counsel agreed.  (Id.)  The Court

continued through each subparagraph, noting that the parties agreed on (d),

acceptance of responsibility, and that, on (e), defense would be able to argue

regarding criminal history.  (Id. 10.)  Udoibok stated "Correct, Your Honor," to

each.  (Id.)

Adejumo was then sworn in and examined by the Court.  (Plea Tr. 10.)  He

testified that he understood everything that was in the Plea Agreement and that

Udoibok had answered all the questions that he had regarding the Plea

Agreement.  (Id. 11-12.)  He stated that he was satisfied with his representation.

(Id. 12, 17.)  The Court asked: "Have there been any promises made to you, other

than what's in the plea agreement and sentencing stipulations, been made to you

to get you to enter a plea of guilty here today?"  (Id. 15.)  Adejumo testified: "No,

sir."  (Id.)  He further testified that he understood everything in the Plea

Agreement and agreed with everything in the Plea Agreement.  (Id. 17.)

Later, during the hearing, the Government asked: "And in this case the Government is going to argue that your fraud proceeds were in excess of a million dollars.  Do you understand that?"  Adejumo responded: "Yes, I do." (Id. 19-20.)

In connection with the sentencing hearing, Defendant objected to the PSI's statement that the loss was more than $1 million and asserted that the loss was actually less than $500,000.  ([Docket No. 663-1] Def. Sent. Mem. at 2-3.)  During the sentencing hearing, the Government noted: "He [Adejumo] has objected to the loss, but that loss amount was agreed upon in the plea agreement."  ([Docket No. 807] July 18, 2012 Sent. Tr. 3.)

The Court then addressed the loss issue as follows:

THE COURT: All right.  Dealing with loss, in the plea agreement the defendant stipulated to a loss of more than $1 million but less than $2.5 million and therefore that's a 16 plus enhancement, plea agreement paragraph 6(b).  Now the defendant is asserting that the loss should be less.  Is that correct?

MR. UDOIBOK: Yes, Your Honor.  May I?

THE COURT: No.  I'll ask the questions.  The plea agreement, signed by the defendant, signed by Defense counsel, and by the Government, stipulated to a loss.

MR. UDOIBOK: Correct, Your Honor.

THE COURT: Aren't you bound by that?

MR. UDOIBOK: Yes, we are.

THE COURT: All right.  Therefore, Defense objection dealing with any further loss – less loss is denied.  Therefore the Court adopts the 16 plus enhancement.

([Docket No. 807] July 18, 2012 Sent. Tr. 5-6.)

On direct appeal, Adejumo challenged the loss amount enhancement.  The

Eighth Circuit opined:

Although Adejumo stipulated in his plea agreement that he and others obtained or attempted to obtain in excess of $1 million, he did not concede he was personally responsible for the entire amount, and he did not plead guilty to a conspiracy.  At his plea hearing, the government told Adejumo and the court that, while it believed the amount of loss was more than $1 million but less than $2.5 million, Adejumo would be allowed to dispute the loss amount at sentencing.  When Adejumo objected to the amount of loss recommended in the presentence report, the government did not contest his ability to do so.  At sentencing, however, Adejumo agreed with the court that he was bound by the stipulation in his plea agreement.  Because he so agreed, Adejumo is precluded from disputing the loss amount on appeal.

United States v. Adejumo, 772 F.3d 513, 538 (8th Cir. 2014) (citation omitted).

### 2.      The Parties' Positions Regarding the Loss Amount

Adejumo claims Udoibok told him the Government would argue that the

loss was more than $1 million, but that the Government had agreed to allow the

defense to argue the loss amount.  (Adejumo Decl. ¶ 3.)  He asserts that Udoibok

further stated that, at sentencing, the Government would have to show that

Adejumo caused the loss of more than $1 million.  (<u>Id.</u>)  Adejumo "was confident

that [he] would be held responsible for a substantially lower loss amount" and

would not have pled guilty unless he thought that he could challenge the

Government's claim that the loss was more than $1 million.  (<u>Id.</u>)  Finally,

Adejumo asserts that Udoibok never told him that the defense was not permitted

to contest the loss amount.  (<u>Id.</u> ¶ 5.)

Udoibok avers that there was no oral side agreement with the Government

regarding disputing the loss amount, that he had multiple discussions with

Adejumo regarding the loss amount, that Adejumo understood that the Plea

Agreement contained a stipulated loss range that the Government would not let

him challenge, and that Adejumo agreed to the Plea Agreement with a full

understanding that the loss amount could not be contested.  (Udoibok Decl. ¶¶

3-12.)

Adejumo argues that, during the sentencing hearing, Udoibok should have

advised the Court that the parties had agreed that Defendant would have an

opportunity to challenge the loss.  He asserts that, if his counsel had contested

the loss amount, the Government would have been unable to prove that he was

responsible for $1 million in losses based on the relevant conduct specified in the

Plea Agreement.

### 3.   Discussion

The Court agrees that the Government's initial oral statements regarding

loss amount made during the change of plea hearing were confusing and could

have been interpreted to indicate that Defendant could contest the loss amount.

However, during the change of plea hearing, the Court took note of this

confusion and went through each subparagraph of Paragraph 6 of the Plea

Agreement to clarify between the parties which portions of the Guideline

calculations had been stipulated to and which portions could be contested at

sentencing.  Both counsel agreed on the record that the loss amount was not one

of the issues that would be contested.  This oral agreement confirmed the

unambiguous written Plea Agreement, signed by both attorneys and Defendant,

in which the parties agreed to "stipulate" to a 16-level loss enhancement

"because the loss amount was more than $1,000,000 but less than $2,500,000."

The Plea Agreement explicitly stated that "[t]he foregoing stipulations are

binding on the parties."  (Plea Agreement ¶ 7.)  Further clarifying, when the Plea

Agreement did intend that Defendant would object to an enhancement, it stated:

"The defendant reserves the right to object to the role enhancement;" and when

the parties believed that a certain calculation applied, but did not intend to

stipulate to that calculation, the Plea Agreement stated: "This does not constitute

a stipulation, but a belief based on an assessment of the information currently

known."  (Id. ¶ 6(c), (e).)  No such language of reservation was included with

regard to the loss enhancement stipulation.

Following the Court's clarification that the parties had agreed to not

contest the loss amount, Adejumo was placed under oath and he testified that

there were no other promises made to him, other than what was in the Plea

Agreement and sentencing stipulations, to get him to enter a plea of guilty.

Thus, Adejumo disavowed his current claim that there was an oral side

agreement to allow him to contest the loss amount.  He also testified that he

understood everything in the Plea Agreement and agreed with everything in the

Plea Agreement.

"[I]n collaterally attacking a plea of guilty a prisoner 'may not ordinarily

repudiate' statements made to the sentencing judge when the plea was entered . .

. ."  Pennington v. Housewright, 666 F.2d 329, 331 (8th Cir. 1981) (quoting

Blackledge v. Allison, 431 U.S. 63, 73 (1977)).  "[S]olemn declarations in open

court carry a strong presumption of verity." Pennington, 666 F.2d at 331 (quoting

Blackledge, 431 U.S. at 74).

> [O]nce a person has entered a guilty plea any subsequent
> presentation of conclusory allegations unsupported by specifics is
> subject to summary dismissal, as are contentions that in the face of
> the record are wholly incredible.  Additionally, a district court is not
> required to conduct an evidentiary hearing on allegations which
> amount[ ] to no more than a bare contradiction of statements
> petitioner made when she [or he] pled guilty.

Tran v. Lockhart, 849 F.2d 1064, 1068 (8th Cir. 1988) (citations omitted).

Based on the unambiguous Plea Agreement, the Court's clarification

during the change of plea hearing, and Adejumo's statements under oath during

the change of plea hearing, the Court concludes that Adejumo knowingly and

intelligently agreed to a Plea Agreement in which he stipulated to a loss amount

of more than $1 million, so Udoibok's decision to not contest the loss amount

during the sentencing hearing did not fall below an objective standard of

reasonableness.

Additionally, the Court concludes that Adejumo cannot show prejudice.

The Court "take[s] a broad view of what conduct and related loss amounts can

be included in calculating loss." United States v. DeRosier, 501 F.3d 888, 896 (8th

Cir. 2007).  Even if a defendant pleads guilty to a fraud count, but not a related

conspiracy count,

> the loss resulting from the conspiracy[] [] may still be included
> under U.S.S.G. § 1B1.3 if the conspiracy is 'part of the same course of
> conduct or common scheme or plan' as the [] fraud.  [T]his is a fact
> intensive inquiry in which the district court is given broad discretion
> to assess the relevant facts.  In this circuit, the district court can
> assess conduct involved in dismissed counts.

United States v. Morton, 957 F.2d 577, 579-80 (8th Cir. 1992) (citations omitted).

Thus, Adejumo's claim that the loss amount is limited to the $17,800 cash

advance from J.A.'s Chase Visa Card is misplaced.  As the Court explained in its

Restitution Order, the Plea Agreement explicitly contemplated that Defendant's

relevant conduct was far larger than the $17,800 stolen under J.A.'s identity.

([Docket No. 1156] Restitution Order at 12-17.)  The Superseding Indictment

encompassed a broad scheme from 2006 through March 2011 covering a wide

variety of activity undertaken to defraud banks and bank customers.  In

connection with the restitution hearing, the Government provided ample

evidence of Adejumo's extensive participation in this scheme from 2006 through

the end of 2009.  And Adejumo has not pointed to evidence to show a reasonable

probability that, if he had contested the loss amount at the sentencing hearing,

the Government would not have been able to prove an actual or intended loss

amount of more than $ 1 million.

F.     **Ground Four: Ineffective Assistance of Counsel for Failure to Meaningfully Challenge the Evidence that Defendant Was a Manager or Supervisor**

1.     **The Role Enhancement**

The Plea Agreement provided that the Government would seek a 3-level

enhancement for Defendant's role as a manager or supervisor in criminal activity

involving five or more participants and that Defendant reserved the right to

object to that role enhancement.  (Plea Agreement ¶ 6(c).)  In the Government's

sentencing memorandum, it stated that the role enhancement was supported by

the trial testimony of Kabaso Manda, Jude Okafor, Jacqueline Clack, and Police

Officer Joe Moore, as well as telephone records.  ([Docket No. 712] Govt. Sent.

Mem. at 3.)  The Court had presided over the trial in February 2012.  The Court

sentenced Defendant on August 14, 2012.  [Docket No. 742]  The trial testimony

transcripts were first filed in this matter in February and March 2013.  [Docket

Nos. 861-65, 868-78, 888]

In Udoibok's sentencing memorandum, he argued that the role

enhancement should not apply because Adejumo did not manage anyone.

([Docket No. 663-1] Def. Sent. Mem. 3-4.)  He also argued that Adejumo

30

frequently communicated with Co-Defendant Oladipo Coker because they were

friends and from the same Nigerian tribe, not because Adejumo managed Coker.

He further asserted that Clack was not arrested with Adejumo and Adejumo was

not involved with her in the Iowa incident.  (Id. at 4.)

During the sentencing hearing, the following exchange occurred regarding

the role enhancement:

> MS. ANAYA [GOVERNMENT]: The other evidentiary issue, Your
> Honor, which once again we can take from the testimony at trial and
> the evidence in this case, is the role, which is objected to by the
> defendant, the three-level enhancement.  He has objected to the loss,
> but that loss amount was agreed upon in the plea agreement.
>
> THE COURT: All right.  What were you planning on dealing with
> the role?
>
> MS. ANAYA: Well, Your Honor, I mean, the Court has heard –
>
> THE COURT: I have heard the trial.  I have heard all the testimony.
>
> MS. ANAYA: I am just saying those are the two areas that are in
> contest today.
>
> THE COURT: Okay. Counsel.
>
> * * *
>
> MR. UDOIBOK: And regarding – you have heard testimony in
> court.  You know whatever extent the defendant was involved in the
> activities.  I don't think the Court will learn anything new from what
> you already know and the papers have been submitted.

(July 18, 2012 Sent. Tr. 3-4.)

Later, the Court stated:

The Government argues that the presentence investigation properly applied the three-level aggravated enhancement.  Defense counsel and defendant argue that it did not.

The Court has heard the testimony of Manda, Okafor, Clack, and the Edina Police officer Joel Moore and also seen telephone records and summary of calls that were admitted into evidence to support the role enhancement for this defendant.  Therefore, he will receive the three-point enhancement.

(Id. 7.)

On direct appeal, Adejumo attacked the application of the role enhancement.  The Eighth Circuit held:

At his sentencing hearing, the government stated its intent to have the court rely on the trial testimony of Adejumo's co-defendants.  The district court gave Adejumo an opportunity to object, but Adejumo acquiesced.  Accordingly, we find Adejumo has waived any objection he had to the district court relying on testimony from the trial, precluding appellate review.

United States v. Adejumo, 772 F.3d 513, 537 (8th Cir. 2014).  The appellate court then concluded that it was not clear error to impose the 3-level enhancement for being a manager or supervisor.  Id. at 537-38.

### 2.      Adejumo's Argument

Adejumo argues that Udoibok was ineffective because, although he objected to the role enhancement, he failed to order and review the trial transcripts before allowing the Government and Court to rely on the testimony of witnesses from Adejumo's co-Defendants' trial; nor did he object to the Court's reliance on trial testimony for its decision.  Neither Adejumo nor his counsel had participated in the trial.  Adejumo concludes that, if he had known the substance of the allegations against him regarding role, he would have been able to explain to Udoibok how they were false.

The Court concludes that Defendant cannot show ineffective assistance of counsel with respect to this claim.  The Court properly relied on the evidence from his co-Defendants' trial, and Adejumo cannot show a reasonable probability that the Court would not have applied the role enhancement if Udoibok had objected to use of the trial testimony or ordered the transcript.

### 3.      Relevant Trial Testimony

### a)      Testimony of Jaqueline Clack

Clack testified that she was only involved in fraudulent activity in 2005 and 2006.  ([Docket No. 874] Trial Tr. 769-71, 780-81.)  The Court rejects Defendant's argument that her testimony is irrelevant because she could not

know anything about Adejumo's relevant conduct in 2008 and 2009.  As the

Court has already noted, Adejumo's relevant conduct encompassed, at a

minimum, his participation in the fraudulent scheme from 2006 through the end

of 2009.

Clack testified that Adejumo, known to her as "Malik," introduced her to

the fraudulent use of money orders through the Post Office, cashier's checks

mostly cashed at Wal-Mart, and to her first out-of-state fraud.  (Id. 761, 763-64,

788.)  He provided cashier's checks to her to cash and provided her the fake IDs

to use, used money from Steve in California to provide her tickets for out-of-state

travel to commit bank fraud, and split the proceeds of the bank fraud 50/50 with

Steve and then split his portion 50/50 with her.  (Id. 764-68, 772.)  She testified

that Adejumo directed her to do all of her out-of-state fraudulent activity until

she was charged in Iowa and that she worked for him.  (Id. 768 ("Everything was

through Malik until I caught my charge in Iowa."), 775 ("I didn't work for Big D

like I did Malik.").)  She characterized Adejumo as "the mind behind what I was

doing" with regard to bank fraud.  (Id. 764.)

The Court observed Clack's testimony at trial.  Her testimony was credible and strong evidence of Adejumo's role as a manager or supervisor in criminal activity involving five or more participants.

### b)    Testimony of Joel Moore

Edina Police Officer Joel Moore testified that Adejumo and Oladipo Coker lived at the same address, 819 42nd Avenue North.  ([Docket No. 874] Trial Tr. 814-15.)  He further testified that a search of that address on March 4, 2010, yielded various evidence of bank fraud and identity theft, as well as photos and identification for Adejumo.  (Id. 812-19.)  The evidence also indicated connections with Oluwaleye Oluwatula, Jude Okafor, and Olugbenga Adeniran.  (Id. 815-16, 818.)

### c)    Testimony of Judge Okafor

Okafor confirmed that Adejumo was known as "Malik" and testified that he had heard Adejumo, Coker, and Adeniran discuss their intent to commit credit card fraud and bank fraud and brag about the money that they obtained from credit card fraud.  ([Docket No. 888] Trial Tr. 1728, 1732-35.)  He heard the three of them discuss opening fraudulent bank accounts and stating that

sometimes they found someone to go open the accounts for them and sometimes

they opened the accounts themselves.  (Id. 1735.)

### d)     Testimony of Kabaso Manda

During trial, Manda testified that, in November 2009, he travelled from

Georgia to Minnesota to commit fraud.  ([Docket No. 875] Trial Tr. 945-46.)  Chris

from Atlanta paid for his plane ticket, instructed Manda on what to do when he

got there, and monitored the fraudulent transactions on a computer.  (Id. 945-48,

961, 969.)  Chris directed Manda to meet Adejumo, known to him as Malik, so

Manda called Adejumo upon his arrival at the airport.  (Id. 946-47.)  Adejumo

picked Manda up from the airport, drove Manda to a hotel to drop off his

luggage, and then brought Manda to Adejumo's house.  (Id. 947-49.)  Adejumo

then drove Manda to commit fraud.  (Id. 949.)  The next day, Adejumo picked

Manda up from the hotel and took him back to his house to meet Adeniran and

Coker.  (Id. 949-951.)  Chris had given Manda fraudulent credit cards and IDs for

Manda and Adeniran to use, which Manda had brought with him to Minnesota.

(Id. 951-53.)  Manda gave "everything" to Adejumo and Adejumo "would choose

which ones we use for that day or whatever transaction they want to do."  (Id.

954.)  Adejumo drove Manda to the banks, while Coker and Adeniran drove in

another car.  (Id. 954-55.) After committing the fraud, Manda would come out of

the bank and give everything, including all of the proceeds of the fraud, to

Adejumo to keep.  (Id. 955-56.)  Other members of the scheme were also

supposed to give all of the proceeds they obtained to Adejumo.  (Id. 961-62.)  At

the very end of the trip, Adejumo gave Manda his cut of the proceeds.  (Id. 956,

981.)

Adejumo asserts that he did not pay for a hotel for Manda, he was not a

conduit for money, he did not know the person in Atlanta, and Manda got the

credit cards directly from the person in Atlanta.  ([Docket No. 1064] § 2255

Petition at 13.)  Adejumo further asserts that Manda's proffer statement

demonstrates that he contradicted his trial testimony in his proffer.  He raises

five points of alleged contradictions between Manda's proffer and his trial

testimony.  All of these issues were raised during trial on Manda's cross

examination.  (See Trial Tr. 990-93.)

### 4.    Lack of Prejudice

The Court concludes that Defendant cannot show prejudice.  The Court

was permitted to rely on evidence from Adejumo's co-Defendants' trial in

determining the application of the role enhancement so long as Adejumo had

notice of the potential enhancement and use of trial testimony and the

opportunity to explain or rebut the evidence.  See, e.g., United States v. Bonine,

598 F. App'x 462, 464 (8th Cir. 2015); Smith v. United States, 206 F.3d 812, 813

(8th Cir. 2000).  Adejumo was given notice of the Government's intent to rely on

such testimony and had the opportunity to object to the evidence, which he did

by objecting to the enhancement in his sentencing brief.

Moreover, Adejumo fails to cite any evidence or legitimate argument that

would support a conclusion that the Court would not have applied the role

enhancement if Udoibok had obtained the transcript or objected to the use of the

trial testimony.  The only evidence that Adejumo now cites to discredit a

witness's credibility relates to Manda.  At the time of Adejumo's sentencing, the

Court had already heard Manda's testimony at trial, including the cross

examination of Manda during trial, which included questions regarding the

potential contradictions between Manda's trial testimony and his proffer

statement now highlighted by Adejumo.  Therefore, Adejumo provides no

evidence that, had Udoibok taken a different course of action, the Court would

have changed its opinion of Manda's credibility.

As a whole, the trial testimony clearly supported the application of the role enhancement.  Taken together, the evidence showed that Adejumo was extensively involved in the scheme to defraud and that he recruited, supplied the tools needed to commit fraud to, held the proceeds of the fraud from, distributed the fraudulent proceeds to, and directed the activities of recruits, such as Clack. Even if the Court were to have disregarded the testimony of Manda, which it did not, the remaining evidence was more than ample to support application of the role enhancement.  Because Adejumo cannot show prejudice, Ground Four fails.

### G.   Ground Five: Ineffective Assistance of Counsel for Failure to Challenge the Finding that Defendant Was on Probation at the Time of the Offense

#### 1.   Criminal History Calculation

On August 7, 2003, Defendant was convicted of financial transaction card fraud, with an arrest on January 28, 2003.  (PSI ¶ 101.)  When Defendant completed his term of probation on September 14, 2006, the offense was reduced from a felony to a misdemeanor.  (Id.)  He was assessed 1 criminal history point for this offense.  (Id.)

On November 10, 2003, Defendant was convicted of theft by swindle over $2,500, occurring on May 8, 2003.  (PSI ¶102.)  He was sentenced to a 3-year term of probation and 60 days in jail.  (Id.)  He was assessed 2 points.  (Id.)

On April 30, 2004, Defendant was convicted of financial transaction card fraud, occurring on October 21, 2003.  (PSI ¶ 103.)  He completed his term of probation on April 30, 2007.  (Id.)  He was assessed 2 points.  (Id.)

Because Defendant was serving probationary sentences through April 30, 2007, which overlapped with his current offense, the PSI calculated an additional 2 points under U.S.S.G. § 4A1.1(d).  (PSI ¶ 109.)

In total, the PSI calculated 7 criminal history points, resulting in a criminal history category IV.  (PSI ¶ 110.)

At sentencing, Udoibok objected to the criminal history category IV calculated in the PSI on the grounds that Defendant's prior offenses were misdemeanors or reduced to misdemeanors and, at most, should receive 1 point each.  ([Docket No. 663] Def. Sent. Mem. at 5-6.)  Under this theory, Defendant's criminal history category was category III.  (Id.)

In the alternative, Udoibok argued that Defendant's past criminal offenses were relevant conduct to the instant offense and, thus, should be excluded from his criminal history calculation.  (([Docket No. 807] July 18, 2012, Sent. Tr. 9; PSI at A.4.)  Under this theory, the Court would have found that Defendant's current offense began in 2003, and Defendant would have had, at most, 2 criminal

history points based on having committed the current offense while on

probation, giving rise to a category II.

During the sentencing hearing, the Court ruled that Defendant's relevant

conduct did not begin until 2006, rejecting Defendant's argument.  (July 18, 2012

Sent. Tr. 9.)  Thus, the Court adopted the PSI's calculation of Defendant's

criminal history.  (Id.; [Docket No. 808] Aug. 14, 2012 Sent. Tr. 4.)

On direct appeal, Defendant objected to the imposition of the two criminal

history points based on being on probation at the time of the instant offense.  The

Eighth Circuit held that, because Adejumo did not object to the two points

during sentencing, plain error review applied.  Adejumo, 772 F.3d at 538.

Furthermore, the Court did not commit plain error because the PSI identified the

relevant dates of the offense as 2006 to 2011 and Clack's trial testimony

supported that finding.  Id.

### 2.    Defendant's Argument

Defendant asserts that his probation ended before the relevant conduct for

the instant offense began so he should not have been assessed the 2 points based

on being on probation at the time of the instant offense.  (PSI ¶ 109.)  Under this

theory, his criminal history category would have been III.  He asserts that

Udoibok erred by failing to object that the probation predated the relevant

conduct in this case.

### 3.     Discussion

Defendant's claim fails under either prong of the <u>Strickland</u> test.  First,

Udoibok's decision to argue that Defendant should only be assessed, at most, 2

criminal history points because all of the prior convictions were relevant conduct

was a reasonable tactical decision that would have resulted in a lower criminal

history category than that now sought by Defendant.  Under U.S.S.G. § 4A1.1(d),

"[t]wo points are added if the defendant committed any part of the instant

offense (i.e., any relevant conduct) while under any criminal justice sentence,

including probation, parole, supervised release, imprisonment, work release, or

escape status."  U.S.S.G. § 4A1.1, n.4.  "This broad concept of 'relevant conduct'

includes activities that occurred before the date identified by the indictment as

the starting date of the offense."  <u>United States v. Burman</u>, 666 F.3d 1113, 1119

(8th Cir. 2012) (citation omitted).  "Thus, sentencing courts may consider

preindictment activity to establish the starting date of the offense, and then use

that date to calculate the time period for which prior sentences are counted."  <u>Id.</u>

(citation omitted).  In this case, the Court concluded that the relevant conduct

began in 2006, as supported by Clack's trial testimony.  An argument that

Defendant's current offense only occurred during the dates admitted in the Plea

Agreement would have been unsupported by the law and the record, as

previously set forth in this Order and in the Court's Restitution Order.

Even if Udoibok's decision not to challenge the 2006 commencement date

were unreasonable, there was no prejudice.  The Court's decision that Defendant

commenced the instant offence in 2006 was amply supported by the trial record.

Clack testified that she was working for Defendant to commit bank fraud when

she was arrested in Iowa in 2006.  ([Docket No. 874] Trial Tr. 763-69.)  Defendant

cites to no law or fact that would lead to the conclusion that, if Udoibok had

challenged the 2006 commencement date, he would have been successful.

## H.    Conclusion

Because the motion and the files and records of the case conclusively show

that Adejumo is entitled to no relief, the Court dismisses the petition without an

evidentiary hearing.

## I.    Certificate of Appealability

With regard to the Court's procedural rulings, the Court concludes that no

"jurists of reason would find it debatable whether the petition states a valid

claim of the denial of a constitutional right;" nor would "jurists of reason . . . find

it debatable whether the district court was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). With regard to the Court's decision on the merits, it concludes that no "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Id.</u> Therefore, the Court denies a Certificate of Appealability in this case.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

1. Defendant Adetokunbo Olubunmi Adejumo's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence [Docket No. 1064] is **DENIED** and this matter is **DISMISSED WITH PREJUDICE**.

2. The Court denies a Certificate of Appealability in this case.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 17, 2016                    s/ Michael J. Davis
                                        Michael J. Davis
                                        United States District Court